IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BIOVERATIV THERAPEUTICS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| SPECTRUM PHARMACEUTICALS, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Bioverativ Therapeutics Inc. ("Bioverativ"), for its Complaint against Defendant Spectrum Pharmaceuticals, Inc. ("Spectrum"), alleges as follows:

## NATURE OF THE ACTION

1.     This is a civil action for infringement of U.S. Patent Nos. 7,348,004 (the "'004 patent"), 7,404,956 (the "'956 patent"), and 9,725,496 (the "'496 patent") under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including § 271, and for a declaratory judgment of infringement of the '004 patent, the '956 patent, and the '496 patent under 28 U.S.C. §§ 2201 and 2202.

2.     Bioverativ has invested heavily in the development of technologies to bring meaningful progress to people with rare blood disorders.  For example, two products developed by Bioverativ—Eloctate® and Alprolix®—represented major advances in the treatment of hemophilia when launched in the U.S. in 2014.  Bioverativ's innovative technologies have wide-ranging applications and can be used to treat indications beyond rare blood disorders.  The inventions discovered through Bioverativ's research and development of new drug products are described in and protected by patents, including the '004 patent, the '956 patent, and the '496 patent.

3.      This action arises out of Spectrum's imminent commercial manufacture, use, offer for sale and/or sale in the United States, and/or importation into the United States, of ROLONTIS® (eflapegrastim), a granulocyte-colony stimulating factor ("G-CSF") analog for the treatment of neutropenia (an abnormally low count of a type of white blood cell) in patients receiving myelosuppressive anti-cancer drugs.  Spectrum submitted a Biologics License Application ("BLA") to the Food and Drug Administration ("FDA") on October 24, 2019, seeking approval to manufacture, use, and sell its proposed ROLONTIS® product.  If approved, Spectrum's proposed ROLONTIS® product would infringe claims of Bioverativ's '004 patent, '956 patent, and '496 patent.  Upon information and belief, Spectrum intends to market ROLONTIS® in the United States immediately upon receiving FDA approval.  Spectrum's pre-approval manufacturing inspection was scheduled for this month, and Spectrum's CEO publicly stated, "We believe the pre-approval inspection marks the final step in the ROLONTIS review process."  Spectrum also began hiring employees dedicated to ROLONTIS® and reported to the SEC that it has invested over a million dollars in building out its commercial and marketing capabilities to prepare for its launch of ROLONTIS®.

4.       Bioverativ seeks injunctive relief against infringement, monetary damages, attorneys' fees, such other relief as the Court deems just and proper.

## PARTIES

5.      Plaintiff Bioverativ is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 225 Second Avenue, Waltham, Massachusetts 02451.  Bioverativ is engaged in the business of research, development, manufacture, and sale of pharmaceutical products.

6.     Upon information and belief, Defendant Spectrum is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 11500 South Eastern Avenue, Suite 240, Henderson, Nevada 89052.

## JURISDICTION AND VENUE

7.     This action arises under the Patent Laws of the United States and the Food and Drug Laws of the United States, Titles 35 and 21, United States Code.  This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

8.     This Court has jurisdiction over Spectrum because, *inter alia*, upon information and belief, Spectrum is a Delaware corporation, is registered with the Delaware Department of State, Division of Corporations to do business in Delaware under file number 2742853, and has a registered agent for service of process in Delaware (The Corporation Trust Company).  Upon information and belief, Spectrum will market, distribute and/or sell its proposed ROLONTIS® product in the United States, upon approval of the ROLONTIS® BLA, and will derive substantial revenue from the use or consumption of its proposed ROLONTIS® product in the State of Delaware.

9.     Venue is proper in this district under 28 U.S.C. § 1400(b) because, *inter alia*, Spectrum is a corporation organized and existing under the laws of the State of Delaware.

## THE PATENTS-IN-SUIT

10.     On March 25, 2008, the '004 patent, titled "Immunoglobulin Chimeric Monomer-Dimer Hybrids," was issued by the United States Patent and Trademark Office ("PTO").  A true and correct copy of the '004 patent is attached as Exhibit A.

11.     On July 29, 2008, the '956 patent, titled "Immunoglobulin Chimeric Monomer-Dimer Hybrids," was issued by the PTO.  A true and correct copy of the '956 patent is attached as Exhibit B.

12.     On August 8, 2017, the '496 patent, titled "Immunoglobulin Chimeric Monomer-Dimer Hybrids," was issued by the PTO.  A true and correct copy of the '496 patent is attached as Exhibit C.

13.     The '004 patent, the '956 patent, and the '496 patent are owned by Bioverativ.

14.     The '004 patent, the '956 patent, and the '496 patent relate to a chimeric monomer-dimer hybrid protein wherein the protein comprises a first and a second polypeptide chain, the first polypeptide chain comprising at least a portion of an immunoglobulin constant region and a biologically active molecule, and the second polypeptide chain comprising at least a portion of an immunoglobulin constant region without the biologically active molecule of the first chain.  The patents also relate to methods of using the chimeric monomer-dimer hybrid protein of the invention.

15.     Figure 1 of the '004 patent, the '956 patent, and the '496 patent, shown below, illustrates one example of a monomer-dimer hybrid wherein the biologically active molecule is erythropoietin (EPO) and the portion of an immunoglobulin constant region is an IgG Fc region.



FIG. 1

## SPECTRUM'S INFRINGING PRODUCT AND ACTIVITIES

16.     Spectrum's proposed ROLONTIS® product, if approved by the FDA, will infringe the '004 patent, the '956 patent, and the '496 patent.

17.     Although the ROLONTIS® BLA is not public, Spectrum has described its proposed ROLONTIS® product and its properties in other publicly available materials.  For example, Spectrum has posted information about its proposed ROLONTIS® product on its website, has published and presented data and information about its proposed ROLONTIS® product at conferences and in journals, has released information about its proposed ROLONTIS® product in press releases, and has provided updates about its proposed ROLONTIS® product to its investors and the general public through conference calls, presentations, filings, and other documents.

18.     Spectrum's proposed ROLONTIS® product will comprise an analog of granulocyte-colony stimulating factor ("G-CSF") and an Fc antibody fragment, tethered by a flexible polyethylene-glycol ("PEG") linker, along with a second Fc antibody fragment chemically associated with the first Fc antibody fragment.

19.     Upon information and belief, Spectrum submitted the ROLONTIS® BLA to the FDA on or about October 24, 2019 seeking an indication for the treatment of neutropenia in patients receiving myelosuppressive anti-cancer drugs.  Spectrum had previously submitted a BLA for ROLONTIS® in 2018 seeking the same indication but Spectrum announced on March 15, 2019 that it had withdrawn the application following a request from the FDA for additional manufacturing-related information.

20.     Upon information and belief, Spectrum will imminently infringe, directly and/or through agents or intermediaries, one or more claims of the '004 patent, the '956 patent, and the

'496 patent by making, using, offering for sale, selling and/or importing ROLONTIS® in the United States.

21.     Unless enjoined by this Court, if ROLONTIS® is approved by the FDA, Spectrum will immediately make, use, offer to sell, or sell ROLONTIS® within the United States, and/or will immediately import ROLONTIS® into the United States.

22.     Spectrum has been aware of the '496 patent since at least March 30, 2021, when Bioverativ's in-house counsel provided notice of the '496 patent to Spectrum.

## COUNT I
## DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '004 PATENT

23.     Bioverativ incorporates and realleges paragraphs 1-22 above, as if set forth specifically here.

24.     Bioverativ's claim arises under the Patent Laws of the United States, 35 U.S.C. § 271 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

25.     Upon information and belief, if Spectrum's ROLONTIS® BLA is approved, Spectrum or its affiliates will make, offer to sell, sell, or otherwise distribute ROLONTIS® in the United States.

26.     The sale of ROLONTIS® in the United States will induce and/or contribute to the infringement of claims of the '004 patent, including at least claims 1, 2, 20, 21, 22, 23, 25, 59, 60, 82, and 83.

27.     Spectrum's ROLONTIS® product, as described in a November 2019 investor presentation (https://www.jefferies.com/CMSFiles/Jefferies.com/files/Spectrum.pdf), is shown below.



28.     Spectrum's proposed ROLONTIS® product is a pharmaceutical composition comprising (a) a chimeric protein (i.e., a monomer-dimer hybrid immunoconjugate) and (b) a pharmaceutically acceptable carrier.

29.     The chimeric protein of Spectrum's proposed ROLONTIS® product comprises first and second polypeptide chains, wherein the first polypeptide chain comprises a cytokine (a G-CSF analog) and an immunoglobulin constant region or a portion thereof that is an FcRn binding partner (an Fc fragment of a human IgG4 antibody).

30.     The second polypeptide chain in Spectrum's proposed ROLONTIS® product comprises an immunoglobulin constant region or a portion thereof that is an FcRn binding partner, in particular an Fc fragment, without any biologically active molecule or variable region of an immunoglobulin.

31.     The cytokine and the immunoglobulin constant region or portion thereof in the first polypeptide chain will be connected by a polyethylene glycol (PEG) linker in Spectrum's proposed ROLONTIS® product.

32.     Upon information and belief, the first and second immunoglobulin constant regions in Spectrum's proposed ROLONTIS® product will be chemically associated.

33.     Upon information and belief, Spectrum's BLA seeks FDA approval of Spectrum's ROLONTIS® product for the treatment of neutropenia in patients receiving myelosuppressive anti-cancer drugs.

34.     Upon information and belief, Spectrum's ROLONTIS® product will be administered subcutaneously.

35.     Upon information and belief, Spectrum's proposed ROLONTIS® product, if approved and marketed, will be accompanied by a product label that will instruct and encourage physicians to treat neutropenia in patients receiving myelosuppressive anti-cancer drugs via an improved delivery method, comprising the step of administering a pharmaceutically effective amount of ROLONTIS®, and thereby Spectrum will induce infringement of claims 1, 2, 20, 21, 22, 23, 25, 59, 60, 82, and 83 of the '004 patent under 35 U.S.C. § 271(b).  Bioverativ is unaware of any substantial non-infringing use of Spectrum's proposed ROLONTIS® product other than treating neutropenia in patients receiving myelosuppressive anti-cancer drugs via an improved delivery method, and therefore the marketing of Spectrum's ROLONTIS® product will contribute to infringement of at least claims 1, 2, 20, 21, 22, 23, 25, 59, 60, 82, and 83 of the '004 patent under 35 U.S.C. § 271(c).

36.     Upon information and belief, the FDA's PDUFA (i.e., Prescription Drug User Fee Act) date for the ROLONTIS® BLA (i.e., the date the FDA was expected to deliver its decision whether or not to approve the BLA) was October 24, 2020, but that was deferred due to restrictions on travel related to the COVID-19 pandemic.  Upon information and belief, a pre-approval inspection of the ROLONTIS® manufacturing facility in South Korea was scheduled for this month.  Spectrum's CEO has publicly stated, "We believe the pre-approval inspection marks the final step in the ROLONTIS review process."  ROLONTIS® has already received

marketing authorization from Korea's Ministry of Food and Drug Safety, which Spectrum's

CEO stated, "further raises our confidence in their manufacturing readiness."

37.     According to Spectrum's March 31, 2021 Form 10-K SEC filing, the company

"continue[s] to build out [its] commercial and marketing capabilities to prepare for the launch of

ROLONTIS" and has invested "$1.6 million o[n] increased information technology,

infrastructure and systems-related expenses in preparation for [its] planned commercial launch of

ROLONTIS."

38.     Upon information and belief, Spectrum is currently hiring new employees in

preparation for the commercial launch of ROLONTIS® in the United States.  According to the

"Careers" page of Spectrum's website, there are 29 job openings related to ROLONTIS®.  The

career opportunities include Strategic Account Managers in locations around the United States,

who "will currently be responsible for product sales and pull through for Rolontis (upon FDA

approval)."  Spectrum is also recruiting a Field Reimbursement Manager because it "is building

a commercial organization to bring its late stage pipeline assets to market. . . . [ROLONTIS®]

ha[s] tremendous potential and Spectrum is expanding accordingly."

39.     Upon information and belief, Spectrum's infringing activity, including the offer to

sell and sale of ROLONTIS® complained of herein will begin immediately after the FDA

approves Spectrum's ROLONTIS® BLA.  Any such conduct before the '004 patent expires will

induce and/or contribute to the infringement of one or more claims of the '004 patent under one

or more of 35 U.S.C. §§ 271(b) and (c).

40.     There is a real, substantial, and continuing justiciable controversy between

Bioverativ and Spectrum concerning Spectrum's liability for infringement of the '004 patent for

which this Court may grant declaratory judgment relief consistent with Article III of the United

States Constitution.

41.     On information and belief, the FDA's imminent approval to market ROLONTIS®

in the United States, coupled with Spectrum's intent to launch ROLONTIS® for sale in the

United States immediately following that approval, create a real, substantial, and continuing

justiciable controversy under the Declaratory Judgment Act that Spectrum will directly or

indirectly infringe the '004 patent prior to its expiration.

42.     Bioverativ will be substantially and irreparably harmed by Spectrum's infringing

activities unless those activities are enjoined by this Court.

43.     Upon information and belief, Spectrum has actual knowledge of the '004 patent

and is aware that the sale of its proposed ROLONTIS® product, if approved, prior to the

expiration of the '004 patent would constitute an act of induced or contributory infringement of

the '004 patent.  Spectrum will have actual knowledge of the '004 patent, and its infringement

thereof, at least by the date of this complaint.  Spectrum has no reasonable basis for asserting that

the sale of Spectrum's proposed ROLONTIS® product will not infringe at least claims 1, 2, 20,

21, 22, 23, 25, 59, 60, 82, and 83 of the '004 patent.

44.     This case is exceptional, and Bioverativ is entitled to an award of attorneys' fees

under 35 U.S.C. § 285.

**COUNT II**
**DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '956 PATENT**

45.     Bioverativ incorporates and realleges paragraphs 1-44 above, as if set forth

specifically here.

46.     Bioverativ's claim arises under the Patent Laws of the United States, 35 U.S.C.

§ 271 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

47.     Upon information and belief, if Spectrum's ROLONTIS® BLA is approved, Spectrum or its affiliates will make, offer to sell, sell, or otherwise distribute ROLONTIS® in the United States.

48.     The manufacture, offer for sale, sale, or other distribution in the United States, or importation into the United States, of ROLONTIS® will infringe claims of the '956 patent, including at least claims 1, 9, 10, 38-41, 51, 53, 55, 81, 82, 84, 93, 100, 103, 107, 110, and 111.

49.     Spectrum's ROLONTIS® product, as described in a November 2019 investor presentation (https://www.jefferies.com/CMSFiles/Jefferies.com/files/Spectrum.pdf), is shown below.



50.     Spectrum's proposed ROLONTIS® product is a pharmaceutical composition comprising (a) a chimeric protein (i.e., a monomer-dimer hybrid immunoconjugate) and (b) a pharmaceutically acceptable carrier.

51.     The chimeric protein of Spectrum's proposed ROLONTIS® product comprises first and second polypeptide chains, wherein the first polypeptide chain comprises a cytokine (a G-CSF analog) and an immunoglobulin constant region or a portion thereof that is an FcRn binding partner (an Fc fragment of a human IgG4 antibody).

52.     The second polypeptide chain in Spectrum's proposed ROLONTIS® product comprises an immunoglobulin constant region or a portion thereof that is an FcRn binding partner, in particular an Fc fragment, without any biologically active molecule or variable region of an immunoglobulin.

53.     The cytokine and the immunoglobulin constant region or portion thereof in the first polypeptide chain will be connected by a polyethylene glycol (PEG) linker in Spectrum's proposed ROLONTIS® product.

54.     Upon information and belief, the first and second immunoglobulin constant regions in Spectrum's proposed ROLONTIS® product will be chemically associated.

55.     Upon information and belief, Spectrum's BLA seeks FDA approval of Spectrum's ROLONTIS® product for the treatment of neutropenia in patients receiving myelosuppressive anti-cancer drugs.

56.     Upon information and belief, Spectrum's proposed ROLONTIS® product, if approved and marketed, will be accompanied by a product label that will instruct and encourage physicians to treat neutropenia in patients receiving myelosuppressive anti-cancer drugs via an improved delivery method, comprising the step of administering a pharmaceutically effective amount of ROLONTIS®, and thereby Spectrum will induce infringement of claims 1, 9, 10, 38-41, 51, 53, 55, 81, 82, 84, 93, 100, 103, 107, 110, and 111 of the '956 patent under 35 U.S.C. § 271(b).  Bioverativ is unaware of any substantial non-infringing use of Spectrum's proposed ROLONTIS® product aside from treating neutropenia in patients receiving myelosuppressive anti-cancer drugs via an improved delivery method, and therefore the marketing of Spectrum's ROLONTIS® product will contribute to infringement of at least claims 1, 9, 10, 38-41, 51, 53, 55, 81, 82, 84, 93, 100, 103, 107, 110, and 111 of the '956 patent under 35 U.S.C. § 271(c).

57.     Upon information and belief, the FDA's PDUFA (i.e., Prescription Drug User Fee Act) date for the ROLONTIS® BLA (i.e., the date the FDA was expected to deliver its decision whether or not to approve the BLA) was October 24, 2020, but that was deferred due to restrictions on travel related to the COVID-19 pandemic.  Upon information and belief, a pre-approval inspection of the ROLONTIS® manufacturing facility in South Korea was scheduled for this month.  Spectrum's CEO has publicly stated, "We believe the pre-approval inspection marks the final step in the ROLONTIS review process."  ROLONTIS® has already received marketing authorization from Korea's Ministry of Food and Drug Safety, which Spectrum's CEO stated, "further raises our confidence in their manufacturing readiness."

58.     According to Spectrum's March 31, 2021 Form 10-K SEC filing, the company "continue[s] to build out [its] commercial and marketing capabilities to prepare for the launch of ROLONTIS" and has invested "$1.6 million o[n] increased information technology, infrastructure and systems-related expenses in preparation for [its] planned commercial launch of ROLONTIS."

59.     Upon information and belief, Spectrum is currently hiring new employees in preparation for the commercial launch of ROLONTIS® in the United States.  According to the "Careers" page of Spectrum's website, there are 29 job openings related to ROLONTIS®.  The career opportunities include Strategic Account Managers in locations around the United States, who "will currently be responsible for product sales and pull through for Rolontis (upon FDA approval)."  Spectrum is also recruiting a Field Reimbursement Manager because it "is building a commercial organization to bring its late stage pipeline assets to market. . . . [ROLONTIS®] ha[s] tremendous potential and Spectrum is expanding accordingly."

60.     Upon information and belief, Spectrum's infringing activity, including the commercial manufacture, offer to sell, sale, or importation of ROLONTIS® complained of herein will begin immediately after the FDA approves Spectrum's ROLONTIS® BLA.  Any such conduct before the '956 patent expires will infringe and will induce and/or contribute to the infringement of one or more claims of the '956 patent under one or more of 35 U.S.C. §§ 271(a), (b), and (c).

61.     There is a real, substantial, and continuing justiciable controversy between Bioverativ and Spectrum concerning Spectrum's liability for infringement of the '956 patent for which this Court may grant declaratory judgment relief consistent with Article III of the United States Constitution.

62.     On information and belief, the FDA's imminent approval to market ROLONTIS® in the United States, coupled with Spectrum's intent to launch ROLONTIS® for sale in the United States immediately following that approval, create a real, substantial, and continuing justiciable controversy under the Declaratory Judgment Act that Spectrum will directly or indirectly infringe the '956 patent prior to its expiration.

63.     Bioverativ will be substantially and irreparably harmed by Spectrum's infringing activities unless those activities are enjoined by this Court.

64.     Upon information and belief, Spectrum has actual knowledge of the '956 patent and is aware that the commercial manufacture, use, offer for sale, or sale of its proposed ROLONTIS® product, if approved, prior to the expiration of the '956 patent would constitute an act of infringement of the '956 patent.  Spectrum will have actual knowledge of the '956 patent, and its infringement thereof, at least by the date of this complaint.  Spectrum has no reasonable basis for asserting that the commercial manufacture, use, offer for sale, sale, or importation of

Spectrum's proposed ROLONTIS® product will not infringe at least claims 1, 9, 10, 38-41, 51, 53, 55, 81, 82, 84, 93, 100, 103, 107, 110, and 111 of the '956 patent.

65.     This case is exceptional, and Bioverativ is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

## COUNT III
## DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '496 PATENT

66.     Bioverativ incorporates and realleges paragraphs 1-65 above, as if set forth specifically here.

67.     Bioverativ's claim arises under the Patent Laws of the United States, 35 U.S.C. § 271 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

68.     Upon information and belief, if Spectrum's ROLONTIS® BLA is approved, Spectrum or its affiliates will make, offer to sell, sell, or otherwise distribute ROLONTIS® in the United States.

69.     The manufacture, offer for sale, sale, or other distribution in the United States, or importation into the United States, of ROLONTIS® will infringe claims of the '496 patent, including at least claims 1, 2, 8, 11, 12, 17, 20, 24, 25, and 27.

70.     Spectrum's ROLONTIS® product, as described in a November 2019 investor presentation (https://www.jefferies.com/CMSFiles/Jefferies.com/files/Spectrum.pdf), is shown below.



71.     Spectrum's proposed ROLONTIS® product is a pharmaceutical composition comprising (a) a chimeric protein (i.e., a monomer-dimer hybrid immunoconjugate) and (b) a pharmaceutically acceptable carrier.

72.     The chimeric protein of Spectrum's proposed ROLONTIS® product comprises first and second polypeptide chains, wherein the first polypeptide chain comprises a cytokine (a G-CSF analog) and an immunoglobulin constant region or a portion thereof that is an FcRn binding partner (an Fc fragment of a human IgG4 antibody).

73.     The second polypeptide chain in Spectrum's proposed ROLONTIS® product comprises an immunoglobulin constant region or a portion thereof that is an FcRn binding partner, in particular an Fc fragment, without any biologically active molecule or variable region of an immunoglobulin.

74.     The cytokine and the immunoglobulin constant region or portion thereof in the first polypeptide chain will be connected by a polyethylene glycol (PEG) linker in Spectrum's proposed ROLONTIS® product.

75.     Upon information and belief, Spectrum's BLA seeks FDA approval of Spectrum's ROLONTIS® product for the treatment of neutropenia in patients receiving myelosuppressive anti-cancer drugs.

76.     Upon information and belief, Spectrum's proposed ROLONTIS® product, if approved and marketed, will be accompanied by a product label that will instruct and encourage physicians to treat neutropenia in patients receiving myelosuppressive anti-cancer drugs via an improved delivery method, comprising the step of administering a pharmaceutically effective amount of ROLONTIS®, and thereby Spectrum will induce infringement of claims 1, 2, 8, 11, 12, 17, 20, 24, 25, and 27 of the '496 patent under 35 U.S.C. § 271(b).  Bioverativ is unaware of any substantial non-infringing use of Spectrum's proposed ROLONTIS® product aside from treating neutropenia in patients receiving myelosuppressive anti-cancer drugs via an improved delivery method, and therefore the marketing of Spectrum's ROLONTIS® product will contribute to infringement of at least claims 1, 2, 8, 11, 12, 17, 20, 24, 25, and 27 of the '496 patent under 35 U.S.C. § 271(c).

77.     Upon information and belief, the FDA's PDUFA (i.e., Prescription Drug User Fee Act) date for the ROLONTIS® BLA (i.e., the date the FDA was expected to deliver its decision whether or not to approve the BLA) was October 24, 2020, but that was deferred due to restrictions on travel related to the COVID-19 pandemic.  Upon information and belief, a pre-approval inspection of the ROLONTIS® manufacturing facility in South Korea was scheduled for this month.  Spectrum's CEO has publicly stated, "We believe the pre-approval inspection marks the final step in the ROLONTIS review process."  ROLONTIS® has already received marketing authorization from Korea's Ministry of Food and Drug Safety, which Spectrum's CEO stated, "further raises our confidence in their manufacturing readiness."

78.     According to Spectrum's March 31, 2021 Form 10-K SEC filing, the company "continue[s] to build out [its] commercial and marketing capabilities to prepare for the launch of ROLONTIS" and has invested "$1.6 million o[n] increased information technology,

infrastructure and systems-related expenses in preparation for [its] planned commercial launch of ROLONTIS."

79.    Upon information and belief, Spectrum is currently hiring new employees in preparation for the commercial launch of ROLONTIS® in the United States.  According to the "Careers" page of Spectrum's website, there are 29 job openings related to ROLONTIS®.  The career opportunities include Strategic Account Managers in locations around the United States, who "will currently be responsible for product sales and pull through for Rolontis (upon FDA approval)."  Spectrum is also recruiting a Field Reimbursement Manager because it "is building a commercial organization to bring its late stage pipeline assets to market. . . . [ROLONTIS®] ha[s] tremendous potential and Spectrum is expanding accordingly."

80.    Upon information and belief, Spectrum's infringing activity, including the commercial manufacture, offer to sell, sale, or importation of ROLONTIS® complained of herein will begin immediately after the FDA approves Spectrum's ROLONTIS® BLA.  Any such conduct before the '496 patent expires will infringe and will induce and/or contribute to the infringement of one or more claims of the '496 patent under one or more of 35 U.S.C. §§ 271(a), (b), and (c).

81.    There is a real, substantial, and continuing justiciable controversy between Bioverativ and Spectrum concerning Spectrum's liability for infringement of the '496 patent for which this Court may grant declaratory judgment relief consistent with Article III of the United States Constitution.

82.    On information and belief, the FDA's imminent approval to market ROLONTIS® in the United States, coupled with Spectrum's intent to launch ROLONTIS® for sale in the United States immediately following that approval, create a real, substantial, and continuing

justiciable controversy under the Declaratory Judgment Act that Spectrum will directly or indirectly infringe the '496 patent prior to its expiration.

83.     Bioverativ will be substantially and irreparably harmed by Spectrum's infringing activities unless those activities are enjoined by this Court.

84.     Spectrum has actual knowledge of the '496 patent and is aware that the commercial manufacture, use, offer for sale, or sale of its proposed ROLONTIS® product, if approved, prior to the expiration of the '496 patent would constitute an act of infringement of the '496 patent.  Spectrum has been aware of the '496 patent since at least March 30, 2021, when Bioverativ's in-house counsel provided notice of the '496 patent to Spectrum.  Spectrum has no reasonable basis for asserting that the commercial manufacture, use, offer for sale, sale, or importation of Spectrum's proposed ROLONTIS® product will not infringe at least claims 1, 2, 8, 11, 12, 17, 20, 24, 25, and 27 of the '496 patent.

85.     This case is exceptional, and Bioverativ is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

## REQUEST FOR RELIEF

WHEREFORE, Bioverativ respectfully requests the following relief:

A.     A declaratory judgment that Spectrum's commercial manufacture, use, offer for sale, or sale in, or importation into, the United States of Spectrum's proposed ROLONTIS® product would constitute infringement of at least claims 1, 2, 20, 21, 22, 23, 25, 59, 60, 82, and 83 of the '004 patent; claims 1, 9, 10, 38-41, 51, 53, 55, 81, 82, 84, 93, 100, 103, 107, 110, and 111 of the '956 patent; and claims 1, 2, 8, 11, 12, 17, 20, 24, 25, and 27 of the '496 patent;

B.     An order preliminarily and permanently enjoining Spectrum, its affiliates, subsidiaries, and each of their officers, agents, servants and employees and those acting in privity

or concert with them, from making, using, offering to sell, or selling in the United States, or importing into the United States, Spectrum's proposed ROLONTIS® product until after the expiration of the '004 patent, the '956 patent, and the '496 patent, including any extensions and/or additional periods of exclusivity to which Bioverativ is or becomes entitled;

C.     A declaration under 28 U.S.C. § 2201 that if Spectrum, its officers, agents, servants, employees, licensees, representatives, and attorneys, and any other persons acting in active concert or participation with them or acting on their behalf, engages in the commercial manufacture, use, offer for sale, sale, and/or importation of the product described in Spectrum's ROLONTIS® BLA, that will constitute an act of infringement of the '004 patent, the '956 patent, and the '496 patent;

D.     An award of damages or other relief if Spectrum engages in the commercial manufacture, use, offer for sale, sale and/or importation of its proposed ROLONTIS® product, or any other product that infringes the '004 patent, the '956 patent, and the '496 patent, prior to the expiration of the '004 patent, the '956 patent, and the '496 patent, respectively, inclusive of any extensions and/or additional periods of exclusivity to which Bioverativ is or becomes entitled;

E.     A declaration that this is an exceptional case under 35 U.S.C. § 285 and awarding Bioverativ's costs, expenses, and disbursements in this action, including reasonable attorney fees; and

F.     An award of such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Bioverativ demands a jury trial on all issues so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

OF COUNSEL:

Scott K. Reed
Ha Kung Wong
VENABLE LLP
1290 Avenue of the Americas
New York, NY  10104-3800
(212) 218-2100

May 28, 2021

Jack B. Blumenfeld (#1014)
Karen Jacobs (#2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
kjacobs@morrisnichols.com

*Attorneys for Plaintiff Bioverativ Therapeutics Inc.*